IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| GLORIA JEAN EDWARDS, | ) | Civil Action No. 3:09-3187-RMG-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for DIB on September 22, 2005, alleging disability since July 24, 2001[1] due to lupus, arthritis, cardiac problems, musculoskeletal pain, and fatigue. (Tr. 86, 115). Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held January 13, 2009, at which Plaintiff and a vocational expert ("VE") appeared and testified. The ALJ issued a decision dated March 18, 2009, finding that Plaintiff was not disabled because she was able to perform her past relevant work as a hospital secretary.

---

[1]The ALJ found that Plaintiff filed a previous application on January 15,2 003 and that res judicata was applicable between July 24, 2001 and July 15, 2003. Tr. 12.

Plaintiff was 58 years old as of her date last insured. She has a high school education. See Tr. 116 and 123.

The ALJ found (Tr. 14-18):

1.　The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.

2.　The claimant did not engage in substantial gainful activity during the period from her July 15, 2003 through her date last insured of December 31, 2006 (20 CFR 404.1571 *et seq.*).

3.　Through the date last insured, the claimant had the following severe impairments: rheumatoid arthritis and degenerative disc disease (20 CFR 404.l521, *et. seq.*).

4.　Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, and 404.1526).

5.　After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to sit for 6 hours of an 8-hour day; stand/walk for 2 hours of an 8-hour day; frequently lift/carry light items; occasionally lift 10 pounds; never climb or crawl; occasionally crouch, stoop and reach overhead; and perform no more than frequent fingering and handling.

6.　Through the date last insured, the claimant was capable of performing past relevant work as a secretary (hospital) (D.O.T. #201.362-014). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.　The claimant was not under a disability, as defined in the Social Security Act, at any time from July 15, 2003 through December 31, 2006, the date last insured (20 CFR 404.1520(f)).

On November 21, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (Tr. 1-3). Plaintiff filed this action in the United States District Court on December 8, 2009.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

### MEDICAL RECORD

On May 14, 2001, ophthalmologist Dr. William H. Lee, III wrote that Plaintiff was on Plaquenil therapy for systemic lupus erythematosus ("SLE") and rheumatoid arthritis. His examination of her eyes was essentially unremarkable. Tr. 184. On June 19, 2001, Plaintiff reported to Dr. Airody K. Hebbar that she was in "considerable pain" from her lupus. Dr. Hebbar noted that Plaintiff looked well, wrote that her hip and knee movements "were surprisingly normal," and adjusted Plaintiff's medications. Tr. 304.

A lumbar spine x-ray showed multi-level degenerative disc disease with facet joint hypertrophy posteriorly in Plaintiff's caudal lumbar spine on August 28, 2001. Tr. 165. A non-steroidal anti-inflammatory pain medication was prescribed for her back pain. Tr. 165, 305. Plaintiff began physical therapy for her lumbar disc disease, back pain, and leg pain on September 11, 2001. Her functional limitations were an inability to walk long distances, lift, and bend (Tr. 197).

At her last therapy session on October 12, 2001, Plaintiff demonstrated improved gait. It was noted that she was performing well and she was advised to continue aquatic therapy. Tr. 203.

On December 7, 2001, Plaintiff's hypertension was reasonably well controlled, but she reported an odd sensation in her throat. Dr. Hebbar thought this sensation was a result of panic attacks and prescribed Paxil. Trazadone was prescribed for sleep. Tr. 312. On April 23, 2002, Plaintiff reported that she was having intermittent pain in her joints and chest wall. Dr. Hebbar wrote that Plaintiff's lupus was inactive. He counseled Plaintiff on exercise and prescribed Voltaren (a non-steroidal anti-inflammatory medication). Tr. 314.

On June 19, 2002, Dr. Lee found that Plaintiff's corrected visual acuity was still 20/20 and there was no signs of Plaquenil toxicity. Tr. 181. Plaintiff was examined by Dr. Keith D. Merrill, an orthopaedic surgeon, for complaints of right groin pain on October 17, 2002. He had a normal neurological and vascular examination. An x-ray showed Plaintiff had some sclerosis of her right sacroiliac joint and lumbar spine arthritis, but her hip was normal. Dr. Merrill assessed probable upper level lumbar disc disease with radiculopathy and referred Plaintiff for an MRI. Tr. 285.

On November 1, 2002, a lumbar MRI revealed multi-level disc osteophyte complexes which produced mild bilateral neural foraminal exit stenosis and appeared to impinge upon the existing left L3 nerve root. Tr. 381. On November 7, 2002, Plaintiff reported that her pain was better. Dr. Merrill diagnosed probable stenosis and recommended Vioxx and referral to a pain clinic for possible steroid infections. Tr. 287.

Plaintiff canceled her pain clinic appointment and reported that her spinal stenosis symptoms were somewhat better and she had only mild complaints of right hip and left knee pain for which she

only intermittently took medication. Dr. Merrill assessed resolved spinal stenosis and mild hip and knee pain. Tr. 288.

On February 25, 2003, Dr. Hebbar noted that Plaintiff had positive straight leg raise testing, but no motor weakness in her extremities. Her blood pressure was elevated. Dr. Hebbar adjusted Plaintiff's medications. Tr. 324. No musculoskeletal abnormalities were noted by Dr. Hebbar on March 24 or April 23, 2003. Dr. Hebbar recommended a low calorie diet and advised Plaintiff to exercise 30 to 45 minutes per day. Tr. 325-328. On August 14, 2003, Plaintiff reported high blood pressure, recent fluttering in her chest, and not feeling well. Dr. Todd Detar noted that Plaintiff's lupus might be affecting her problems. Tr. 333-335. Plaintiff had no musculoskeletal or psychiatric complaints, she had normal muscle strength, and she was neurologically intact on November 10, 2003. Tr. 338. On November 20, 2003 and March 30, 2004, Dr. Hebbar noted that Plaintiff appeared well, was in no distress, and was fully oriented with normal mood and affect. Tr. 342, 346.

Physical therapy notes in August 2004 indicate that Plaintiff thought physical therapy was helping her. Tr. 205. On September 3, 2004, Plaintiff did not want to ride the recumbent bike during physical therapy, as she did not want to aggravate her back pain because she was going to a retreat for five days. Tr. 228.

On November 30, 2004, Plaintiff reported to Dr. Hebbar that she had some chronic low back and right hip pain which had responded to medications and injections in the past. She walked without an assistive device and straight leg raising tests were negative. Tr. 351-352. On January 13, 2005, Plaintiff complained to Dr. Detar about shoulder pain. Tr. 354. She reported on February 15, 2005, that she had been unable to sleep or lift her arm above 90 degrees and was in constant pain. She had decreased muscle strength in her upper extremities. Dr. Hebbar noted that cervical spine x-

5

rays revealed significant osteophytes and disc space narrowing. He diagnosed Plaintiff with shoulder pain due to adhesive capsulitis, impingement syndrome, acromioclavicular joint arthritis, rotator cuff tear, and subacromial bursitis. Dr. Hebbar recommended muscle strengthening exercises, and referred Plaintiff to physical therapy. Tr. 356.

Plaintiff reported during her March 14, 2005 physical therapy session that she had an exacerbation of back pain because of the way she was sitting at a movie theater the previous day. Tr. 238. Dr. Hebbar noted that Plaintiff had no weakness in her upper extremities on April 5, 2008. Tr. 358. Physical therapy notes dated April 8, 2005, indicate that Plaintiff's physician thought Plaintiff was improving with physical therapy and that Plaintiff had been referred to a pain clinic for treatment with a TENS unit, injections, and medications. The physical therapist noted that Plaintiff had some decreased strength and decreased cervical motion. Tr. 354.

On May 10, 2005, rheumatologist Dr. Edwin A. Smith evaluated Plaintiff because of her positive anti-nuclear antibody ("ANA") tests. Plaintiff reported that she had participated in physical therapy and had a TENS unit, but was having difficulty sleeping "due to positioning." She said she had some weakness, but no radiation of pain to her hand. Dr. Edwin Smith's examination revealed that Plaintiff had a normal gait, sensation, and reflexes. He assessed cervical and lumbar degenerative joint disease and advised Plaintiff to continue with her medications. Tr. 361. On May 11, 2005, Plaintiff reported that her TENS unit continued to keep her nagging shoulder pain to a controlled level. Tr. 279.

In September 2005, Plaintiff experienced a flare up of her lupus symptoms consisting of fatigue and trace edema. Tr. 362. On October 13, 2005, Plaintiff complained of an acute flare up of back pain and right hip pain, morning stiffness, and an inability to walk in the morning due to

stiffness and pain. Dr. Hebbar's examination revealed that Plaintiff had a depressed affect, limited range of hip motion, positive straight leg raise testing, normal sensation and reflexes, and that she walked with a limp. Dr. Hebbar diagnosed Plaintiff with an acute flare-up of connective tissue disease, depression, and hypertension. Steroid medication was prescribed. Tr. 364-365.

Plaintiff reported remarkable improvement in her symptoms on October 20, 2005. She said she had less than ten minutes of morning stiffness and was able to do most of her daily activities. Plaintiff's spinal range of motion was noted to be much improved and she had no motor weakness in her extremities. Tr. 366.

On November 22, 2005, Dr. Edwin Smith noted that Plaintiff had a normal gait and no swelling, warmth, or tenderness of her joints. He thought that there was "little evidence of active connective tissue disease." He thought that Plaintiff's back and hip symptoms were caused by her lumbar degenerative disc disease and he recommended a new lumbar MRI. Tr. 490-493.

On December 13, 2005, a lumbar MRI revealed multilevel degenerative changes and disc bulges. Tr. 439. Dr. Hebbar noted the same day that Plaintiff had a normal gait, but had right leg weakness. Dr. Hebbar assessed degenerative disc disease with nerve entrapment and referred Plaintiff to pain management. Tr. 487-489.

On December 27, 2005, Dr. Daniel Bates performed a disability evaluation. Plaintiff reported that she had to walk with a cane; could walk for twelve minutes and stand for twenty minutes; had difficulty with stairs and overhead lifting; had back, neck, and joint pain; had stiffness and weakness; and had limitation of motion. Dr. Bates noted that Plaintiff walked very slowly with a cane, had reduced range of motion of the lumbar spine, and normal reflexes. He diagnosed Plaintiff with

hypertension, lupus, rheumatoid arthritis, back pain, and symptoms involving her neck and head. Tr. 411-414.

On January 11, 2006, Dr. Charles T. Fitts, a State agency physician, reviewed Plaintiff's records and opined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and occasionally balance, stoop, kneel, crouch, and crawl. Tr. 416-423. On January 11, 2006, Dr. Bill Schandall, a State agency consultant, opined that Plaintiff had no medically determinable mental impairment. Tr. 424-437.

Dr. Summar Phillips, a pain management specialist, examined Plaintiff for complaints of right hip and thigh pain on March 2, 2006. Plaintiff reported that she walked with a cane due to pain that made her feel unstable. Dr. Phillips noted that Plaintiff's previous right hip MRI revealed no pathology. Examination revealed that Plaintiff had a slightly antalgic gait; had normal muscle strength in her upper and lower extremities; and had no sensory deficits. Dr. Phillips provided Plaintiff with a steroid injection in her right hip and recommended further evaluation. Tr. 475.

Plaintiff complained to Dr. Hebbar about elbow pain on April 20, 2006. Tr. 470-471. She complained to Dr. Smith of bilateral elbow pain and weakness on June 20, 2006. Examination revealed tenderness at both elbows, no swelling at the true elbow joints, normal sensation and reflexes, good insight and judgment, and normal mood and affect. Plaintiff's ESR (erythrocyte sedimentation rate) level was noted to remain elevated. Dr. Smith diagnosed tennis elbow, offered injections which Plaintiff declined, and recommended rest and medications. Tr. 461-464.

Treatment notes from Dr. Edwin Smith dated November 28, 2006 indicate that Plaintiff continued to complain of back and elbow pain. Plaintiff had intact sensation and normal reflexes. Dr. Smith adjusted Plaintiff's medications and advised her to follow-up in six months. Tr. 458-460.

On April 23, 2007, State agency physician Dr. Katrina B. Doig opined (that through December 31, 2006) Plaintiff retained the RFC to lift and carry ten pounds frequently and twenty pounds occasionally; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour day; sit about six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. Tr. 499-506.

On April 23, 2007, Dr. Arthur Smith, a pain management specialist, noted that Plaintiff's tenderness to palpitation to the right midline and facet provocative tests reinforced the diagnosis of facet arthropathy. He provided a medial branch block in Plaintiff's L3-4 facet joint. Tr. 507.

Plaintiff's treatment at Medical University of South Carolina Clinic from July 26, 2007 through September 11, 2008 consisted of diagnostic testing and further treatment for left knee pain, left palm, swelling, low back pain, left arm pain, and neck pain. In December 2007, Plaintiff underwent left knee arthroscopic surgery. On February 11, 2008, Plaintiff reported that she was thrilled with her results regarding her knee and had been able to perform her usual activities without difficulty. She reportedly continued to use a cane because of her back problems. On April 3, 2008, Dr. Marty Player noted that Plaintiff walked with a cane, but had a stable gait. Tr. 515-616.

<u>HEARING TESTIMONY</u>

At the hearing before the ALJ, Plaintiff testified that she was diagnosed with lupus in 2000 and she had rheumatoid arthritis. She said she felt too exhausted and was in too much pain to work,

so she retired from her job with the State. Tr. 25-26. Plaintiff testified that her symptoms included shortness of breath, fatigue, and back pain. She took medications and had a TENS unit, but said they only took the edge off her pain. Tr. 26-28. Plaintiff also reported that she had arthritis pain in her hands at the end of 2006 and had pain in her back and neck in 2004 and 2005. Tr. 29. Plaintiff testified that she had been using a cane since 2004 or 2005 and that a doctor prescribed it because of hip and back pain and her leg sometimes giving way. Plaintiff stated that between 2001 and 2005, she was able to do activities in spurts, but had to rest between tasks. Tr. 30. Plaintiff could be active for one to two hours, but then had to rest for about three hours. Tr. 31.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ erred in failing to find that she met or equaled the Listing of Impairments (the "Listings"), 20 C.F.R. Part 404, Subpart P, Appendix 1, at § 1.04A; (2) the ALJ erred in finding that her lupus was not a severe impairment; (3) the ALJ failed to consider the combined effects of her multiple impairments; and (4) the ALJ failed to meet the Commissioner's burden at step five of the sequential evaluation process.[2] The Commissioner contends that the decision that Plaintiff was not disabled through the expiration of her insured status on December 31, 2006 is supported by substantial evidence and free of reversible legal error.

---

[2]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

A.      Listing

Plaintiff alleges that she met or equals the Listing at § 1.04A (Disorders of the Spine). The Commissioner contends that Plaintiff fails to show that she met the Listing at 1.04B and 1.04C and she fails to show that she met the Listing at 1.04A because she did not have all of the criteria of that Listing.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the claimant have the diagnosis of a listed impairment; the claimant must also have a medically determinable impairment that satisfies all of the criteria in the listing. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period...during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds). An ALJ's failure to explicitly refer to a Listing by name does not, by itself, require remand, provided that the ALJ's decision is sufficient to permit the reviewing court to trace the ALJ's reasoning. See Rice v. Barnhart, 384 F.3d 363, 369-370 (7th Cir. 2004).

Listing 1.04 provides, in pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04.

The ALJ failed to properly consider whether Plaintiff met or equaled Listing 1.04A. The ALJ states that he specifically considered whether Plaintiff's back problems met Listing 1.04, but that:

> evidence of record fails to indicate that the claimant suffers from a disorder of the spine resulting in nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. X-rays and MRI's failed to reveal any significant abnormalities, such as herniation, stenosis, or nerve root impingement.

Tr. 15. Plaintiff, however (as apparently conceded by the Commissioner - see Commissioner's Brief at 24-25), presented evidence of nerve root compression. The MRI of Plaintiff's lumbar spine on November 1, 2002 revealed multi-level disc osteophyte complexes which produced mild bilateral neural foraminal exit stenosis impinging upon the exiting left L3 nerve root and multi-level ligamentum flavum and facet hypertrophy producing spinal canal stenosis. Tr. 381. It does not appear that the ALJ considered whether Plaintiff met other requirements of 1.04A.

The Commissioner argues that Plaintiff has not met these other requirements because the record is unclear as to whether the straight leg raise testing was positive both sitting and supine and there is objective medical evidence showing normal sensation and reflexes, and no motor loss.

12

Plaintiff has presented evidence of positive straight leg raising on multiple occasions and that she required the use of a cane to walk. <u>See</u> Tr. 167-168, 209-210, 324, and 364-365. She points out instances in the record where muscle weakness, radiculopathy, limitation of motion of the spine, and decreased sensation were noted.. Tr. 223-226, 233-234, 283-386, 355-356, 373, 411-414, and 487-489. This action should be remanded to the Commissioner to have the ALJ consider whether Plaintiff met or equaled Listing 1.04A.

B. <u>Severe Impairment and Combined Effect of Impairments</u>

Plaintiff alleges the ALJ erred in not finding that her lupus was a severe impairment and in failing to properly consider the combined effect of all of her impairments. The Commissioner contends that the failure to identify a particular impairment as severe at step two of the sequential evaluation process is not reversible error where, as here, the ALJ finds at least one impairment "severe" and proceeds with the remaining steps, at which all impairments are considered. Alternatively, the Commissioner argues that there was substantial evidence to support the ALJ's conclusion that Plaintiff's lupus was not severe. The Commissioner contends that the ALJ adequately considered Plaintiff's impairments in combination and that even if he did not, three other circuits have held that a separate discussion of claimant's impairments can be sufficient to show that the ALJ sufficiently considered the impairments in combination.

It is the claimant's burden to show that he had a severe impairment. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 145 n. 5 (1987). A non-severe impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" means:

The abilities and aptitudes necessary to do most jobs. Examples of these include –

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

In evaluating a claim for disability insurance benefits, the Commissioner is required to consider the combined effects of a claimant's impairments, and he must adequately explain his evaluation of the combined effect of those impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Hines v. Bowen, 872 F.2d 56 (4th Cir. 1989); Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985). These factors are mandated by Congress' requirement that the Commissioner consider the combined effect of an individual's impairments, 42 U.S.C. § 423(d)(2)(B), and the general requirement by the courts that an ALJ explicitly indicate the weight given to all relevant evidence. Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987); see also Hines, 872 F.2d at 59. "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p.

The Commissioner contends that substantial evidence in the record supports the ALJ's conclusion that Plaintiff's lupus was not severe, specifically that her lupus was for the most part controlled and inactive and Plaintiff has not proven what, if any, additional work restrictions were necessary to capture the effects of this impairment.

The ALJ found that Plaintiff's lupus was not severe because "a treatment note from November 2005 noted little evidence of active connective tissue disease as the claimant's recent ENA, C3, and C4 were normal." Tr. 14. This, however, appears to ignore other evidence of lupus including that Plaintiff had a lupus flare-up in August 2001 causing significant fatigue, chest pain, back pain, and hip pain (Tr. 307); she underwent physical therapy in September 2001 for musculoskeletal symptoms associated with connective tissue disorder (Tr. 197-198); she had pleuritic chest pain which was thought to be due to lupus and was taking Plaquenil for chronic lupus in December 2002 (Tr. 323); in June 2003, Plaintiff had musculoskeletal pain in all motions and a continuing diagnosis of lupus (Tr. 167-168); in August 2003, a physician at MUSC thought that Plaintiff's lupus was affecting her blood pressure and general condition (Tr. 333); in June 2004, Plaintiff had chest pain which was thought to be either muscular or a lupus flare up (Tr. 348-349); she was seen for a follow up for her high sedimentation rate in November 2004 (Tr. 351-353); and she had an acute flare-up of connective tissue disease in October 2005 (Tr. 364-365). The ALJ does not appear to have considered all evidence of the record in making his determination that Plaintiff's lupus was not a severe impairment. As the ALJ did not fully consider Plaintiff lupus, it is not clear whether he properly considered the combined effects of all of Plaintiff's impairments. Thus, it is recommended that this action be remanded for the ALJ to consider whether Plaintiff's lupus was a "severe" impairment and to consider the combined effect of all of Plaintiff's impairments.

C.    <u>Past Relevant Work</u>

Plaintiff appears to allege that the ALJ failed to meet the Commissioner's burden at step five of the sequential evaluation process because the VE testified that if Plaintiff had to frequently change positions and/or could not frequently finger and handle that she could not perform her past relevant work as a hospital secretary (<u>see</u> Tr. 35-38).  The Commissioner contends that the ALJ did not err by rejecting the VE's testimony that there were no jobs existing in significant numbers that an individual with Plaintiff's subjective complaints could perform because the hypothetical question only needed to include those limitations borne out by the evidentiary record and accepted by the ALJ.

At the fourth step of the disability inquiry, a claimant will be found "not disabled" if the claimant is capable of performing his or her past relevant work either as he or she performed it in the past or as it is generally required by employers in the national economy.  SSR 82-61.  The claimant bears the burden of establishing that he or she is incapable of performing his or her past relevant work.  <u>See</u> <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995); <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1992).

Here, the ALJ found that Plaintiff could do her past relevant work as it is generally required by employers in the national economy.  It is unclear, however, whether full consideration of her lupus and her combination of impairments would effect the ALJ's findings concerning Plaintiff's residual functional capacity.  Thus, it may be necessary to revisit this issue on remand.

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence.  This action should be **remanded** to the Commissioner to consider whether Plaintiff's lupus is a severe impairment,

consider all of Plaintiff's impairments in combination, consider whether Plaintiff met or equaled Listing 1.04A, and continue the sequential evaluation process if necessary.

RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

December 22, 2010
Columbia, South Carolina